United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Tamiko Blow, et al., Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 22-22587-Civ-Scola |
| ) | |
| Carnival Corporation, and others, ) | |
| Defendants. ) | |

**Order Granting in Part and Denying in Part Motion to Dismiss**

This matter is before the Court on the motion to dismiss the Plaintiffs' amended complaint filed by Defendant Carnival Corporation ("Carnival").[1] (Mot. Dismiss, ECF No. 33.) The Plaintiff filed a response to the motion (Resp., ECF No. 44), and the Defendant filed a reply memorandum in support of its motion (Reply, ECF No. 49). The Plaintiffs also filed a motion for leave to amend the complaint in the event the Court granted the motion to dismiss. (Mot. Leave Am., ECF No. 45.) Carnival responded to the motion for leave to amend (ECF No. 50), and the Plaintiffs timely replied (ECF No. 52). After careful consideration of the briefing, the record, and the relevant legal authorities, the Court **grants in part** and **denies in part** the Defendant's motion to dismiss (**ECF No. 33**) and **denies** the Plaintiffs' motion for leave to amend (**ECF No. 45**).

**1. Background**

The Plaintiffs, Tamiko and Randall Blow, bring nine separate causes of action against Carnival Corporation, each relating to the death of Donna Faye Nelson during the course of a snorkeling expedition in Mexico. (Am. Compl. ¶¶ 1-6, 45-47, ECF No. 30.)[2] Tamiko Blow also brings these claims on behalf of Donna Faye Nelson's estate, and Randall Blow brings these claims on behalf of his five minor children. (*Id.* ¶¶ 2, 4.) Ms. Nelson tragically drowned while she and the other Plaintiffs were participating in the snorkeling expedition, which the Plaintiffs had booked through Carnival as part of a cruise on the *Carnival Panorama* during late August and early September of 2021. (*Id.* ¶¶ 22, 27, 37, 40, 45-47.)

---

[1] Then-Defendant Vallarta Adventures, S.A. de C.V. ("Vallarta Adventures") joined in the motion to dismiss the amended complaint, arguing the Court lacked personal jurisdiction over it. (Mot. Dismiss at 22-31.) In response, the Plaintiffs voluntarily dismissed their claims against Vallarta. (Not. Vol. Dismissal, ECF No. 43.)

[2] Two of the amended complaint's eleven counts were asserted only against Vallarta Adventures (Counts VI and VII). (*Id.* ¶¶ 92-108.)

The Plaintiffs never allege the details of their relationship with Ms. Nelson, although they establish that she was a member of the Blow family. (*Id.* ¶ 35.) They do allege, however, that the Blow family embarked on the *Carnival Panorama* in California for a cruise along the western coast of Mexico on August 18, 2021. (*Id.* ¶¶ 24, 33, 35.) Unbeknownst to the Blows (and to Carnival), Hurricane Nora would impact the course of their cruise and contribute to Ms. Nelson's unfortunate death. (*Id.* ¶ 33.) Hurricane Nora forced the *Carnival Panorama* to detour from its original schedule prior to September 1, although the ship did not ultimately detour from Puerto Vallarta, where the Plaintiffs undertook the snorkeling expedition with Vallarta Adventures. (*Id.*)

Prior to departing on the cruise, the Plaintiffs had received and viewed promotional material for shore excursions, including the snorkeling expedition they ultimately engaged in with Vallarta Adventures. (*Id.* ¶¶ 23-24.) Carnival mailed the Plaintiffs promotional materials, and the Plaintiffs also reviewed promotions on Carnival's website. (*Id.*)

On August 29, 2021, while on the cruise and prior to the *Carnival Panorama's* arrival in Puerto Vallarta, the Plaintiffs sought out additional information regarding shore excursions. (*Id.* ¶ 27.) The Plaintiffs inquired about the snorkeling expedition, among other excursions, and ultimately purchased tickets for the expedition, entitled the "Bubble Tour: Exclusive Majahuitas Beach Cove." (*Id.*) When the Plaintiffs inquired about the snorkeling expedition, Carnival's representative assured them that the expedition was "safe," that there would lookouts present, and that all snorkeling gear would be provided. (*Id.* ¶ 28.) The Plaintiffs also allege that the promotional materials they received and viewed established that the expedition was "easy" and safe, the materials and did not contain adequate warnings regarding the expedition's true nature. (*Id.* ¶¶ 33-35.)

On September 1, 2021, the Plaintiffs departed to engage in the expedition. (*Id.* ¶ 40.) The expedition was supposed to be "a beach-based party" during which the participating passengers could choose to snorkel from a larger boat, or take a smaller boat to the beach and kayak, swim, or otherwise relax and enjoy the beach. (*Id.* ¶¶ 41-42.) Randall Blow, Donna Faye Nelson, and four of the five minor children chose to stay on the larger boat and snorkel. (*Id.* ¶ 42.) Tamiko Blow and the fifth minor child chose to take the smaller boat to the beach, where they swam in the ocean. (*Id.*)

The excursion operator—Vallarta Adventures—never instructed any of the participants on how to use the provided snorkeling equipment. (*Id.* ¶ 43.) Alternately, the Plaintiffs plead, if any instruction was given, it was "dangerously inadequate." (*Id.*) Regardless, the Plaintiffs allege that no instructions whatsoever were given regarding "how to breathe through a snorkel," "what to do in the event a snorkeler ingested water," "how to call for help if in danger," and that the

participants should "snorkel with a buddy system" (i.e., they should not engage in the activity without a partner to help should danger arise). (*Id.*)

Due to the impacts of Hurricane Nora, conditions were especially rough on September 1, including a strong current in the water. (*Id.* ¶ 46.) The Blow family all struggled with the strong current: both the snorkelers and the swimmers had difficulty swimming in the strong waters. (*Id.*) After being in the water for only about thirty minutes, Donna Faye Nelson began to ingest water and drown. (*Id.* ¶ 45.) Within forty-five minutes, her body was discovered. (*Id.* ¶ 47.) The Blow family all observed her being retrieved from the water, after which Randall and Tamiko attempted to perform CPR on her. (*Id.* ¶ 48.) Emergency responders did not arrive on scene for almost one hour, by which time Donna Faye Nelson had died. (*Id.*)

The Plaintiffs point to multiple failures on Carnival's part (and Vallarta Adventures' part, which the Plaintiffs attribute to Carnival). (*Id.* ¶¶ 45, 48.) First, the Plaintiffs allege that they were not warned about the strong currents in the water, that the excursion was not canceled when it should have been due to the impeding hurricane, that no safety lookouts were provided, that they received inadequate instructions on the use of snorkeling equipment, and that the snorkeling equipment and life vest that Ms. Nelson used were defective. (*Id.* ¶ 45.) Second, the Plaintiffs allege that Carnival did not have a proper emergency plan in place, that none of the Carnival or Vallarta Adventures personnel on sight knew how to administer CPR, that there was no automated electric defibrillator available, and that Carnival and Vallarta Adventures unreasonably delayed alerting emergency responders of Ms. Nelson's condition. (*Id.* ¶ 48.) Based on these alleged deficiencies, and their observation of Ms. Nelson's tragic death, the surviving Plaintiffs all allege that they suffered from "severe mental distress." (*Id.* ¶ 49.)

Based on these circumstances, the Plaintiffs bring nine claims against Carnival: misleading advertising in violation of Florida statutory law (Count 1), negligent misrepresentation (Count 2), negligent selection and/or retention (Count 3), negligent failure to warn (Count 4), general negligence (Count 5), negligence based on apparent agency or agency by estoppel Count 8), negligence based on joint venture (Count 9), breach of contract based on third-party beneficiary status (Count 10), and breach of non-delegable duty (Count 11). (*Id.* ¶¶ 63-91; 109-139.)

Carnival, in turn, moves to dismiss each claim under Federal Rule of Civil Procedure 12(b)(6), arguing that the Plaintiffs have failed to sufficiently plead their claims, request improper damages, and that the amended complaint is a shotgun pleading. (Mot. Dismiss at 3-4.) The Plaintiffs argue they have sufficiently stated each claim, they seek appropriate damages, and that the complaint is properly pleaded. (Resp. at 1-2.) The Court will address each argument in turn, below.

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Analysis

First, the Court addresses Carnival's assertion that the Plaintiffs seek impermissible damages under the Death on the High Seas Act ("DOHSA," 46 U.S.C. §§ 30301 *et seq.*). The Court finds that none of the categories of damages the Plaintiffs seek are prohibited under DOHSA. Second, the Court finds that the

amended complaint is not a shotgun pleading. Third, and finally, the Court finds that the Plaintiffs plead sufficient facts to establish that they are plausibly entitled to relief under the majority of their claims—only Counts 9 and 10 fail to state a claim upon which relief may be granted.

### A. The Complaint is Governed by the Death on the High Seas Act

Carnival argues that some of the damages that the Plaintiffs seek for Donna Faye Nelson's death are barred by DOHSA, which allows the recovery of only pecuniary damages. (Mot. Dismiss at 4-5); 46 U.S.C. § 30303. Carnival asserts that damages for "loss of [Ms. Nelson's] household support, love, guidance, and support" should be barred as non-pecuniary. (Mot. Dismiss at 6.) The Plaintiffs do not dispute that maritime law governs this action and, therefore, DOHSA applies here. (Resp. at 2.) They dispute that any of the damages they seek are non-pecuniary, however. (*Id.*)

"Recovery under DOHSA is expressly limited to pecuniary losses." *Sexton v. Carnival Corp.*, No. 20-20990-CIV, 2021 WL 2400274, at *3 (S.D. Fla. June 11, 2021), *amended on reconsideration on other grounds*, No. 20-20990-CIV, 2021 WL 3006916 (S.D. Fla. July 15, 2021) (Scola, J.) (citing *Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228, 1230 (5th Cir. 1980) ("DOHSA specifically limits recoverable damages to those pecuniary in nature.")).[3] "The measure of recovery under DOHSA is the actual pecuniary benefits that the decedent's beneficiaries could reasonably have expected to receive from the continued life of the decedent." *Id.* (cleaned up; citing *Solomon v. Warren*, 540 F.2d 777, 786 (5th Cir.1976)). "Pecuniary losses include loss of support, loss of services, and loss of nurture and guidance." *Tello v. Royal Caribbean Cruises, Ltd.*, 946 F. Supp. 2d 1340, 1343 (S.D. Fla. 2013) (Lenard, J.)). Pecuniary losses under DOHSA are "not so narrow as to exclude damages for the loss of services of a husband, wife, or child," but damages for a decedent's "pain and suffering" or for loss of society are barred under DOHSA. *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1318 (S.D. Fla. 2019) (Torres Mag. J.) (citations omitted), *report and recommendation adopted*, No. 18-20829-CIV, 2019 WL 2254962 (S.D. Fla. Mar. 21, 2019) (Williams, J.). Funeral expenses, however, are considered pecuniary damages under DOHSA. *Id.*

Under each of their claims for relief, the Plaintiffs plead that they suffered the following damages: (1) "medical and body transportation expenses"; (2) "funeral expenses"; (3) lost "financial contributions" from Ms. Nelson; (4) lost "household support" from Ms. Nelson; (4) lost "love, guidance and support" from Ms. Nelson; and (5) personal "severe mental distress . . . with physical

---

[3] The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

manifestations" that resulted in impaired earning capacity and lost wages, along with the lost "benefit of the Plaintiffs' vacation, cruise, and transportation costs." (*See, e.g.,* Am. Compl. at 40-41.)

None of these damages are non-pecuniary. Medical, transportation, and funeral costs are clearly pecuniary. *Kennedy*, 385 F. Supp. 3d at 1318-19. Lost household support and lost guidance, love, and support are sufficiently pecuniary, as well. *Id.* Finally, the damages that the Plaintiffs seek related to any "severe mental distress" and resulting physical manifestations are for **their own** distress, not for Ms. Nelson's. (*See, e.g.,* Am. Compl. at 40-41.) Accordingly, those damages are not barred by DOHSA. *See Kennedy*, 385 F. Supp. 3d 1302, 1318 (observing that damages for "the **decedent's** 'pain and suffering'" are barred by DOHSA) (emphasis added).

### B. The Complaint Is Not a Shotgun Pleading

Carnival also argues that the amended complaint is a shotgun pleading, asserting that it incorrectly incorporates all of the general factual allegations into each separate count for relief. (Mot. at 6.) That is not, however, the definition of a shotgun pleading.

The Eleventh Circuit recognizes four types of shotgun pleadings: (1) "complaint[s] containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) complaints that do not separate "into a different count each cause of action or claim for relief"; and (4) complaints that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

To be certain, the amended complaint is not precisely a model of clarity or easy reading. But the purpose of the Eleventh Circuit's shotgun pleadings jurisprudence is not to punish drafters of complaints for poor drafting choices, such as the use of overly long paragraphs. As the Court addressed in its previous order dismissing the original complaint as a shotgun pleading, the purpose of the doctrine is to ensure that the Court may be able to "determine which facts the Plaintiffs intend to support which claims." (Order Granting Mot. Dismiss at 2, ECF No. 27) (citing *Anderson v. Dist. Bd. Of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

At any rate, the amended complaint fits none of the categories of shotgun pleadings. Carnival's primary argument—that incorporating all of the general

factual allegations into each count creates a shotgun pleading—is an incorrect reading of the Eleventh Circuit's precedent. A complaint constitutes a shotgun pleading "where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d t 1321. The Plaintiffs' approach here does not contradict that basic requirement, and it is also clear that the Plaintiffs' general factual pleadings are relevant to each of the claims for relief, even if the general allegations are more verbose than necessary. And, finally, the Plaintiffs re-plead specific factual allegations in each count that support those counts. Accordingly, the amended complaint is not an incomprehensible shotgun pleading. *See Perricone v. Carnival Corp.*, No. 15-20309-CV, 2016 WL 1161214, at *3 (S.D. Fla. Mar. 24, 2016) (Gayles, J.) (denying motion to dismiss complaint as shotgun pleading where the complaint incorporated all general factual allegations in each count and also repeated specific factual details in each count).

### C. The Plaintiffs Sufficiently Plead Claims for Misleading Advertising and Negligent Misrepresentation (Counts 1 & 2)

Carnival next moves to dismiss each of the Plaintiffs' individual counts for relief for failure to state a claim, beginning with Counts I and II. Carnival argues that Count I (misleading advertising under Florida statutory law) is deficient because the Plaintiffs never allege that the allegedly misleading brochures were red or disseminated in Florida. (Mot. Dismiss at 7.) Carnival also claims that personal injury plaintiffs may not avail themselves of the Florida statute. (*Id.*) Finally, Carnival claims that the Plaintiffs' common-law negligent misrepresentation claim is supported only by conclusory allegations. (*Id.* at 8.)

Carnival misses the boat with each argument. First, the Plaintiffs clearly plead that the allegedly misleading brochures were disseminated from Florida. (Am. Compl. ¶ 66 ("Carnival distributed the above outlined misleading advertisements and marketing material primarily from its headquarters in Miami, Florida, U.S.A. to the general public in Florida, specifically, and to the U.S. at large."). Second, the clear weight of authority in this district holds that personal injury plaintiffs may rely on the Florida statute where, as here, the plaintiffs had engaged in a commercial transaction with the defendant. *See, e.g., Brown v. Oceania Cruises, Inc.*, No. 17-22645-CIV, 2017 WL 10379580, at *7 (S.D. Fla. Nov. 20, 2017) (Altonaga, J.); *see also Serra-Cruz v. Carnival Corp.*, No. 18-2303-CIV, 2019 WL 13190647, at *5 n.1 (S.D. Fla. Feb. 12, 2019) (Ungaro, J.). Third, the Plaintiffs plead sufficient facts to support their common-law claim for negligent misrepresentation.

To establish their claims for negligent misrepresentation under both Florida common law and Fla. Stat. § 817.41, the Plaintiffs must allege sufficient facts showing to following:

> (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation.

*Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773-CIV, 2019 WL 8895223, at *5 (S.D. Fla. Nov. 15, 2019) (Scola, J.) (citing *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1364, 1371 (S.D. Fla. 2019)). Carnival challenges whether any of the representations alleged here are plausibly alleged to be false and whether the Plaintiffs have established that they justifiably relied on those representations. (Mot. Dismiss at 8.) The Plaintiffs, in turn, point to their allegations in Paragraphs 65 and 73 of the amended complaint, arguing that Carnival's alleged representations are actionable. (Resp. at 4.)

The Plaintiffs point to several specific and meaningful misrepresentations that Carnival allegedly made, including the following: that the snorkeling excursion was "safe," that Carnival stated "we will have people there to look out for you," that Carnival would "provide snorkel gear," and that the excursion was "easy." (Am. Compl. ¶ 65.) The Court does not need to repeat its review of the factual allegations here to explain why these representations, paired with Ms. Nelson's tragic death, create actionable misrepresentations. Rather, it may be simply stated that the Plaintiffs have alleged a series of misrepresentations by Carnival that created a very different expectation than the reality the Plaintiffs encountered on September 1, 2021.

The Court also observes that two of Carnival's alleged misrepresentations, while maybe not generally actionable on their own, are in the circumstances alleged here particularly egregious. Given the impending danger of Hurricane Nora, and the fact that the *Carnival Panorama* had already been forced to detour from one port of call due to the hurricane's impact, Carnival had a significant reason not to have made representations that the snorkeling expedition was especially "safe" or "easy." (Am. Compl. ¶ 33.) Paired with the allegations of defective equipment and insufficient lookouts, the Plaintiffs' these alleged misrepresentations are all the more actionable. *See, e.g., Barham v. Royal Caribbean Cruises Ltd.*, 556 F. Supp. 3d 1318, 1326-27 (S.D. Fla. 2021) (Moreno, J.)*, appeal dismissed*, No. 21-13119-JJ, 2021 WL 6197353 (11th Cir. Nov. 22,

2021).[4] And, as the Plaintiffs point out, they also plead a number of reasons why their reliance on these alleged misrepresentations was justified, chief among them the allegation that Carnival marketed the snorkeling expedition and simultaneously "recommended its passengers not to engage in excursions, tours, or activities that are not sold through Carnival." (Am. Compl. ¶ 69.)

Accordingly, the Court finds that the Plaintiffs have sufficiently stated both Count 1 and Count 2 and denies Carnival's motion to dismiss them.

### D. The Plaintiffs Sufficiently Plead Their Claim for Negligent Selection or Retention against Carnival (Count 3)

Next, Carnival argues that the Plaintiffs fail to allege that Carnival had sufficient knowledge of Vallarta Adventures' incompetence or unfitness, and therefore fail to support their negligent selection or retention claim. (Mot. Dismiss at 10.) The Plaintiffs, in turn, point to their detailed allegations regarding Carnival's initial approval process and follow-up inspection process for excursion operators, which should have given Carnival notice of Vallarta Adventures' shortcomings. (Resp. at 5-6.)

To plead a claim for negligent selection, a plaintiff "must allege that the [tour] company was incompetent or unfit to perform the work, that [the cruise line] knew or reasonably should have known of the particular incompetence or unfitness, and that such incompetence or unfitness proximately caused [the plaintiff's] injuries." . . . *Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302, 1310 (S.D. Fla. 2019) (Scola, J.). "The relevant inquiry is whether the cruise line diligently inquired into the tour operator's fitness." *Id.* at 1311 (cleaned up). Where a plaintiff alleges that a cruise line has an inspection process for excursion operators that should have revealed the defects alleged in the complaint, but in fact did not, that is typically sufficient to demonstrate that a defendant should have knowledge of the alleged defects, at least at the motion to dismiss stage. *Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, 1358 (S.D. Fla. 2016) (Altonaga,

---

[4] Given its relevance to the circumstances at hand, it is worth reviewing Judge Moreno's analysis in *Barham* here in full:

> These facts are slightly different than the standard case involving a general promise of safety followed by unlucky harm. First, here, there was a specific reason that Defendant shouldn't have made these promises. Namely, it was empirically demonstrable that a volcanic eruption was more likely than usual . . . . Second, some of the alleged misrepresentations here are more specific than general promises of safety. For example, Plaintiffs highlight that RCL promised that the Excursion Entities "provides proper equipment and ensures the safety of gear used on active excursions." That promise was broken considering that Plaintiffs were not provided with protective suits that protect from severe burns, for example.

*Id.*

J.) ("Specifically, Plaintiff's allegation Carnival should have become aware of the risk-creating condition during inspections of the Excursion Entities . . . is sufficient regarding Carnival's actual or constructive notice of the risk-creating condition.").

That is precisely what the Plaintiffs allege here: "notice [of Vallarta Adventures' incompetence] should have been acquired through Carnival's initial approval process or its yearly inspections of the subject excursion." (Am. Compl. ¶ 56.) The Plaintiffs even more specifically allege that Carnival did not conduct the inspections properly, failed to determine that Vallarta Adventures did not provide adequate instructions on the operation of snorkeling equipment, and further was unaware of the strong summertime currents in the area during hurricane season because Carnival did not conduct any inspections during the summer. (*Id.* ¶¶ 58-59.) And the Plaintiffs establish that Carnival should have learned about the strong currents, the lack of lookouts, the defective equipment, and the insufficient instructions had Carnival conducted the inspections appropriately. (*Id.* ¶ 61.) This is more than sufficient to demonstrate that Carnival knew or reasonably should have known of Vallarta Adventures' alleged incompetence. *Heller*, 191 F. Supp. 3d at 1358.

Therefore, the Court denies Carnival's motion to dismiss Count 3.

### E. The Plaintiffs Sufficiently Plead Claims for Negligent Failure to Warn and Negligence against Carnival (Counts 4 & 5)

Carnival then argues that the Plaintiffs' claims for negligent failure to warn and general negligence should be dismissed because the Plaintiffs seek to impose a heightened and unwarranted duty on Carnival and because the Plaintiffs do not sufficiently allege that Carnival was on notice of any potentially dangerous conditions. (Mot. Dismiss at 13-14.) Further, Carnival argues, it did not even have a duty to warn of known dangers because those dangers were open and obvious. (*Id.* at 14-15.) The Plaintiffs, in turn, argue that the duty they allege Carnival to have breached is supported by the law, and that Carnival has had extensive notice of the dangers associated with snorkeling expeditions (which they also pleaded in the amended complaint.) (Resp. at 7-12.) They also assert that Carnival's arguments about its claimed lack of a duty to warn are better addressed on summary judgment. (*Id.* at 12.)

The Plaintiffs allege in both counts that Carnival owed the Plaintiffs a duty of "reasonable care under the circumstances." (Am. Compl. ¶¶ 85.)[5] Carnival claims that the Plaintiffs' allegations of more specific failings elsewhere in the amended complaint, such as the failure to provide lookouts or adequate instructions, seek to impose on Carnival a duty it does not owe the Plaintiffs.

---

[5] Count 5 states the duty as "reasonable or ordinary care": hardly a distinction. (Am. Compl. ¶ 92.)

(Mot. Dismiss at 13.) Instead, Carnival argues, it owes only the duty to warn of known dangers once its passengers departed from the ship. (*Id.*) But this is incorrect.

As this Court has previously observed, "although generally the duty to warn is the most relevant duty regarding off-vessel excursions, a cruise ship might have additional obligations under the 'reasonable care' standard, if, for example, there is an agency relationship between the cruise ship and the excursion operator." *Bailey*, 369 F. Supp. 3d at 1310 (cleaned up). "Notably, the Eleventh Circuit did not state that the duty to warn was the *only* duty owed to a passenger while on shore." *Id.* (cleaned up). As the Plaintiffs observe, the correct formulation of Carnival's duty is that of "reasonable care under the circumstances." *Id.* The duty to warn of known dangers beyond the ship is, in fact, a subset of the general duty a of reasonable care that a shipowner owes to its passengers. *Id.*

Carnival also argues that the Plaintiffs have failed to plead that Carnival had notice of the alleged dangerous conditions associated with the snorkeling expedition. (Mot. Dismiss at 13-14.) This is simply incorrect. The Plaintiffs offer a bevy of support for Carnival's notice. First, they allege that the *Carnival Panorama* had previously detoured to avoid Hurricane Nora. (Am. Compl. ¶ 33.) That is sufficient to establish notice of the storm's potential harmful impacts. Second, they allege that Carnival has been made aware of similar dangers associated with snorkeling excursions based on the public filings in at least six recent lawsuits in the Southern District of Florida (*Id.* ¶ 55.) At least two of those lawsuits involved passengers drowning on snorkeling expeditions. (*Id.*) Third, as discussed above, the Plaintiffs plead significant factual allegations regarding Carnival's approval and recurring inspection process for excursion operators, which should have provided notice here. (*Id.* ¶¶ 56-61.) Fourth, and finally, the Plaintiffs allege that Carnival deletes from its website customers' reviews of excursions that offer complaints about safety or prior incidents, suggesting that Carnival is clearly aware of, at the minimum, the existence of customer complaints of prior accidents. (*Id.* ¶ 32.)

Finally, the Court also observes that Carnival's argument that it lacked a duty to warn the Plaintiffs about the "open and obvious" dangers of snorkeling in the open ocean is not properly resolved at this time. The Eleventh Circuit has observed that "even though a plaintiff may be able to ascertain the danger of an open and obvious condition via her senses, she may not understand the *extent* of the danger." *Barham*, 556 F. Supp. 3d at 1329 (citing *Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x 949, 952-53 (11th Cir. 2016)) (emphasis in original). And, as determined in *Barham*, "the general, abstract risk of a volcano eruption (like slipping on a wet deck) may be open and obvious, but the extent of that risk— that the volcano had erupted several times in recent years and geological warning signs were flashing—may not be." *Id.* So too here: while the dangers of swimming

in the open ocean may be "open and obvious" in a general sense, the specific dangers associated with the Plaintiffs' snorkeling excursion—especially subject to the weather conditions imposed by Hurricane Nora—may not be. *Id.*

Therefore, the Court cannot and will not say at this stage that the Plaintiffs' allegations are insufficient to support their negligence claims, that Carnival did not owe any duty other than the duty to warn, or that Carnival did not even owe a duty to warn. *Bailey*, 369 F. Supp. 3d at 1309-10; *Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256, 1269 (S.D. Fla. 2020) (Williams, J.) ("Plaintiff's allegation of co-ownership/co-control coupled with Carnival's internal procedures to do initial and annual inspections of its shore excursions and Carnival selling the zip-lining excursion through its website is sufficient [to establish notice] at the pleading stage."); *Barham*, 556 F. Supp. 3d at 1329. Accordingly, the Court denies the motion to dismiss Counts 4 and 5.

### F. The Plaintiffs Sufficiently Plead a Claim for Negligence Based on Apparent Agency or Agency by Estoppel against Carnival (Count 8)

Next, Carnival argues that Count 8 should be dismissed because apparent agency and agency by estoppel are theories of liability rather than claims in and of themselves, and because the Plaintiffs' ticket contract and Carnival's website (which Carnival attaches to its motion) state that excursion operators are independent contractors. (Mot. Dismiss at 15-18.) The Plaintiffs respond that the claim is really a negligence claim with an agency theory of liability and that considering Carnival's ticket contract and website exhibits would be improper at this stage of litigation. (Resp. at 13-14.) Additionally, the Plaintiffs argue that the Court cannot consider Carnival's contract with Vallarta Adventures because it is not referenced at all in the amended complaint. (*Id.* at 18.)

First, the Plaintiffs' claim is a claim for negligence, based on Vallarta Adventures' alleged negligence, and pleaded against Carnival on liability theories of either apparent agency or agency by estoppel. (Am. Compl. ¶ 115 ("The forgoing acts of negligence of Carnival and the Excursion Entities were a direct and proximate cause of Donna Faye Nelson's death and the living Plaintiff's [sic] injuries."); *see, e.g., Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV, 2014 WL 6682514, at *7 (S.D. Fla. Nov. 25, 2014) (Goodman, Mag. J.) ("Its label notwithstanding, Count III advances an alternative theory supporting Plaintiffs' *negligence* count, namely, that Royal Caribbean is liable for the Excursion Entities' negligence because it held those entities out as its agents.") (emphasis in original). As in *Ash*, while Count 8 is "inartfully drafted," it is clearly enough a negligence claim applying an agency theory of liability, and the Court therefore construes it as such. 2014 WL 6682514, at *7.

Second, courts in the Southern District of Florida generally decline to consider ticket contracts that are not attached to complaint when addressing tort claims, rather than contract claims, finding the tickets not to be central to those plaintiffs' claims. *Barham*, 556 F. Supp. 3d at 1330 (declining to consider ticket contract and observing that "other Courts in this district have found documents like these not to be central to Plaintiffs' claims when the claims are based in *tort* rather than *contract*.") (emphasis in original); *Kennedy*, 385 F. Supp. 3d at 1337 (determining that neither ticket contract nor defendant's website were central to the plaintiffs' tort claims). To consider documents outside the four corners of the complaint on a motion to dismiss, the Court must determine that those documents are "(1) referred to in the Complaint, (2) central to the dispute, (3) whose contents are not disputed, and (4) attached to the Motion [to dismiss]." *Barham*, 556 F. Supp. 3d at 1331. As in *Barhman* and *Kennedy*, the Court declines to find the ticket contract or the website captures to be "central" to the Plaintiffs' tort claims. 556 F. Supp. 3d at 1330; 385 F. Supp. 3d at 1337.

The Court therefore will not consider the ticket contract or website captures, and therefore denies Carnival's motion to dismiss Count 8.

### H. The Plaintiffs Cannot State a Claim for Negligence Based upon Joint Venture (Count 9) in Light of Carnival's Agreement with Vallarta Adventures

The Plaintiffs' count for negligence based on joint venture (Count 9), however, is premised on a contractual agreement, that Carnival provides and the Court may accordingly consider. *Barham*, 556 F. Supp. 3d at 1330-31. Here, the Plaintiffs plead that "Carnival and the Excursion Entities entered into an agreement where Carnival would sell the subject excursion to its passengers and the Excursion Entities would operate the subject excursion." (Am. Compl. ¶ 118.) Reviewing nearly identical language, *Barham* found the contract between the cruise line and the tour operator both to be central to the plaintiff's claim and to disclaim any potential joint venture. 556 F. Supp. 3d at 1331. The Court may therefore consider the agreement between Carnival and Vallarta Adventures, which Carnival provides as Exhibit E to its motion to dismiss. (Mot. Dismiss Ex. E, ECF No. 33-5.)

To demonstrate a joint venture, the plaintiff must plead the following: "(1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter; (4) a right to share in the profits; and (5) a duty to share in any losses which may be sustained." *Barham*, 556 F. Supp. 3d at 1330. Here, the agreement between Carnival and Vallarta clearly disclaims the joint control element of a joint venture: it establishes that Vallarta Adventures may not bind Carnival or otherwise create

obligations for Carnival, and therefore does not establish joint control. (Mot. Dismiss Ex. E § 11). Additionally, the agreement expressly disclaims an intent to create a joint venture. (*Id.*) Under these facts, courts have found that a plaintiff cannot sustain a joint venture claim. *Barham*, 556 F. Supp. 3d at 1330-31; *Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1209-10 (S.D. Fla. 2020) (Moore, J.) (dismissing claim for negligence based on joint venture theory where agreement expressly disclaimed joint venture). Therefore, the Court dismisses Count 9 for failure to state a claim upon which relief may be granted. Because the claim is barred by plain contractual language, the Court dismisses this claim with prejudice.

### H. The Plaintiffs Cannot State a Third-Party Beneficiary Claim for Breach of Contract against Carnival (Count 10) Based on Carnival's Agreement with Vallarta Adventures

As with Count 9, the Court may consider Carnival and Vallarta Adventures' agreement with regards to Count 10, because the amended complaint specifically references the agreement and breach of that agreement is central to the Plaintiffs' claims. (Am. Compl. ¶ 133); *Barham,* 556 F. Supp. 3d at 1331 ("Here, the contract is certainly referred to in the complaint and central to the dispute because it is literally the contract of which the Plaintiffs claims they are third party beneficiaries."). And "[f]or a contract to intend to benefit a third party, such intent must be specific and must be clearly expressed in the contract." *Id.* (citation omitted).

The agreement here does not simply fail to express a specific intent to benefit third parties; it expressly disclaims any such intent. (Mot. Dismiss Ex. E § 12 ("Each party represents and warrants to the other party that . . . (c) its execution and performance under this Agreement will not result in a breach of any obligation to any third party or infringe or otherwise violate any third party's rights.").) Courts in this district routinely find this sort of language to bar any third-party beneficiary claim. *See, e.g., Barham*, 556 F. Supp. 3d at 1331 (citing *Nichols v. Carnival Corp.*, No. 19-20836-CIV, 2019 WL 11556754 (S.D. Fla. June 21, 2019)). Accordingly, the Court dismisses Count 10 for failure to state a claim. Again, because this claim is barred by plain contractual language, the Court dismisses it with prejudice.

### I. The Plaintiffs Sufficiently Plead a Claim for Breach of Non-Delegable Duty (Count 11)

Carnival argues that the final claim in the amended complaint, for breach of non-delegable duty relating to Carnival's alleged duty to provide a safe excursion, imposes a duty on it that does not exist under maritime law and that

is belied by the ticket contract. (Mot. Dismiss at 21.) The Plaintiffs, in response, assert that such a duty may be alleged when the shipowner makes some form of guarantee or assurance to its passengers. (Resp. at 20-21.)

This Court has previously found that such a duty may be sufficiently alleged where a plaintiff can demonstrate that some form of representation or assurance of safety, above and beyond standard contract language, is made. *Bailey*, 369 F. Supp. 3d at 1309 (denying motion to dismiss breach of non-delegable duty claim where the plaintiff alleged that the cruise line "pointedly assured her that the [zipline] tour was 'safe, insured, reputable, and reliable.'"). Such representations can potentially impose a contractual duty even if the contract itself does not contain them. *Id.*

Here, the Plaintiffs allege multiple oral representations by Carnival regarding the snorkeling expedition: that it was "safe," that it was "easy," that Carnival would provide lookouts, and that Carnival would provide snorkeling gear. (Am. Compl. ¶¶ 28, 33.) As in *Bailey*, these representations are sufficient to ensure that Count 11 survives the motion to dismiss. 369 F. Supp. 3d at 1309. The Court therefore declines to dismiss Count 11.

### J. The Plaintiffs' Motion for Leave to Amend Is Procedurally Improper

Finally, the Court denies the Plaintiffs' motion for leave to amend the amended complaint. The motion is procedurally improper for multiple reasons. First, it fails to attach a proposed amended pleading in violation of Local Rule 15.1. S.D. Fla. L.R. 15.1 ("A party who moves to amend a pleading shall attach the original of the amendment to the motion."). Second, the Plaintiffs' method of requesting amendment—seeking leave to amend without identifying the intended amendments, and doing so only in the event the Court issues an adverse ruling—is improper. *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") Third, and finally, the Court has dismissed Counts 9 and 10 with prejudice because they are clearly prohibited by the terms of the contract upon which they rely; accordingly, amendment would be futile.

### 4. Conclusion

For the reasons stated above, the Court **grants in part** and **denies in part** Defendant Carnival's motion to dismiss the complaint and **dismisses Counts 9 and 10** of the amended complaint, **with prejudice**. (**ECF No. 33**.) The Court further **denies** the Plaintiffs' motion for leave to amend the complaint. (**ECF No. 45**.)

**Done and ordered** in Miami, Florida, on May 25, 2023.

Robert N. Scola, Jr.
United States District Judge